THE TOWN OF BOSWELL *v*. WAKLEY.

[No. 18,440.   Filed December 8, 1897.]

MUNICIPAL CORPORATIONS.—*Sidewalks.*—*Negligence.*—A city or incorporated town is liable for the negligence of its officers in the construction or repair of sidewalks. *pp. 66, 67.*

SPECIAL VERDICT.—*Conclusions of Law.*—Conclusions of law in a special verdict must be disregarded by the court in rendering judgment thereon. *p. 69.*

SAME.—*Contributory Negligence.*—The findings of a special verdict in an action against a town for an injury received in passing over a board sidewalk which show that plaintiff had frequently passed over such sidewalk and knew that it was old, that the boards were loose and that the sidewalk was dangerous to pass over; that plaintiff passed over same in the night time with his hands in his pockets, with full knowledge that some of the boards were loose and liable to trip a passenger; that he could have safely and conveniently gone home by a different route, and that after receiving the injury there was no evidence that he was actually trying to avoid anticipated danger by reason of said sidewalk being out of repair, fail to

to establish affirmatively that plaintiff was exercising ordinary care for his own safety when he was injured, and that he was free from contributory fault or negligence. *pp. 69–71.*

SAME.—*Contributory Negligence.*—A finding in a special verdict in an action against a town for damages for injuries received on a defective sidewalk that plaintiff was walking slowly and carefully will not warrant the legal conclusion that plaintiff was free from contributory fault. *pp. 71–74.*

From the Newton Circuit Court. *Reversed.*

*S. P. Thompson, A. B. McAdams, Frank Foltz, Harrie R. Kurrie* and *Charles G. Spitler,* for appellant.

*Daniel Frazer* and *Will Isham,* for appellee.

McCABE, J.—The appellee sued the appellant to recover damages, which he alleged in his complaint he had sustained through defendant's negligence in suffering one of its plank sidewalks, running east and west, to be and remain out of repair, the same being constructed by nailing inch boards across three stringers lying on the sidewalk lengthwise; that the stringers had become rotten to such an extent that they would not hold nails; that the plank or boards in many places were not fastened at all to said stringers because of the nails rotting off, or else coming loose from the rotten boards and timbers. It is alleged that as plaintiff was passing along and over said sidewalk on the evening of January 26, 1896, about 9 o'clock, the night being dark, one of the unfastened boards had become moved to the north about seven or eight inches from the south stringer, and was resting on but two stringers. That plaintiff stepped on the loose south end of said board, which immediately gave way and let the plaintiff's foot fall down and between said stringers, where the same became fast, and the plaintiff, losing his footing, fell and was thrown violently to the earth, fracturing the bones of his shoulder

and causing other injuries, without any fault or neg-
ligence on the plaintiff's part.

The issues formed were tried by a jury, who re-
turned a special verdict in the form of interrogatories
pursuant to the act approved March 11, 1895 (Acts
1895, p. 248). These proceedings took place before
that act was repealed. The trial court overruled ap-
pellant's motion for judgment in its favor on the
special verdict, and sustained the appellee's motion
for judgment in his favor upon said special verdict,
and overruled the appellant's motion for a new trial.
The errors assigned call in question these rulings, and
further assign that the complaint does not state facts
sufficient to constitute a cause of action.

The amount of the damages assessed, and for which
judgment was rendered, was $740.00; the appeal was
properly taken to the Appellate Court. The cause
comes into this court on account of one of its judges
having rendered the decision in the lower court, there-
by being precluded from sitting on the appeal, and
the other four judges being equally divided, the cause
was, pursuant to the statute, transferred to this court.
Section 1358, Burns' R. S. 1894.

The first contention of the appellant is, that the
complaint is bad because the recent decisions of this
court holding counties not liable for the negligence of
its officers in the construction and repair of bridges
apply as well to incorporated towns and cities, and
in support thereof cites *Board, etc.,* v. *Allman,* 142 Ind.
573. It is contended that this court ought now to
overrule the long line of decisions made by it, holding
municipalities liable for such negligence as much as
it ought to overrule, as it did in that case, a long
line of its own decisions holding counties liable for
negligence in the construction and repair of bridges.
But this court there pointed out a broad distinction

between the powers and liabilities of municipalities in this respect, and the powers and liabilities of counties. Following the rule indicated in that case, we adhere to the doctrine previously established as to the liabilities of incorporated towns and cities for negligence. Hence we hold the complaint sufficient. *Cones* v. *Board, etc.,* 137 Ind. 404. As was said in *Lake Erie, etc., R. R. Co.* v. *Stick,* 143 Ind. 453: "Actionable negligence is made up of three elements, according to our decided cases, all of which must be alleged and proven affirmatively by the plaintiff in order to recover. These elements are first, the defendant's negligence; second, the plaintiff's freedom from fault or negligence in the matter complained of, and third, damage to the plaintiff proximately caused by the defendant's negligence. The failure to establish any one of these elements by the evidence is as fatal to a recovery as the failure to establish each and every one of them. *Ohio, etc., R. W. Co.* v. *Hill, Admx.,* 117 Ind. 56; *Chicago, etc., R. W. Co.* v. *Hedges, Admx.,* 118 Ind. 5; *Louisville, etc., R. W. Co.* v. *Stommel,* 126 Ind. 35; *Indiana, etc., R. W. Co.* v. *Hammock,* 113 Ind. 1; *Pennsylvania Co.* v. *Meyers, Admx.,* 136 Ind. 242; 16 Am. and Eng. Ency. of Law, 388, 389."

It may be conceded that all these elements except that of appellee's freedom from contributory fault or negligence have been established in the facts found in the special verdict. Therefore, it is only necessary to examine so much of the special verdict as relates to this element of the action. It is as follows:

"1. How many times per week did the plaintiff pass over the sidewalk * * * * prior to January 26, 1896? Ans. Three or four times a week.

"2. Since the 1st day of September, 1895, has the plaintiff known and believed that said walk was dangerous to pass over? Yes.

"3. Did plaintiff in fact have actual knowledge prior to January 26, 1896, that said sidewalk was in fact old, that the boards were loose, and that said sidewalk was dangerous to pass in the night time? Yes.

"4. On the night of January 26, 1896, was said sidewalk in fact icy and dangerous to pass over? Yes.

"5. Did the plaintiff, on the night of January 26, 1896, walk over said sidewalk with his hands in his pockets, with full knowledge that some of the boards in said walk were loose and liable to trip a passenger? Yes.

"6. Could the plaintiff have easily, conveniently, and safely, gone home by the way of Main and Adams streets? He might.

"7. Was the plaintiff, at the time of receiving said injury, actually trying to avoid anticipated danger by reason of said sidewalk being old and out of repair? No evidence.

"8. Did the plaintiff in fact fall to the ground without removing his hands from his pockets? Yes.

"9. Was the plaintiff a man of about forty-one years of age, in perfect health and physical vigor, in possession of good eyesight and of all his faculties, about 9 o'clock at night walking carefully and slowly westward along and upon said sidewalk on his way from the church to his home on the left side of his wife, and in company with her? Ans. Yes.

"10. Did * plaintiff * * while walking carefully thereon step with his left foot on the south third of one of said boards which was not nailed or otherwise secured, and so displaced as that the south end thereof had no support, and did not said board give way * * * and said board flying up at the other end catching the right foot of plaintiff and trip him so that he fell to the frozen ground with great violence? Ans. Yes.

"11. Did the plaintiff wholly, by reason of said condition of said sidewalk and without his fault or negligence, receive a fall and injury to his shoulder on said 26th day of January, 1896? Ans. Yes.

"12. Was plaintiff, at the time he received said injury, and at all times theretofore, without knowledge or notice of said defect? Ans. Yes."

The next interrogatory and answer are to the effect that plaintiff, at or before he received the injury, had no knowledge that said board was loose and not nailed and not resting on said south stringer.

"14. Was the plaintiff without fault when he received this injury? Ans. Yes."

The eleventh and fourteenth interrogatories and answers thereto in so far as they attempt to state that the plaintiff was without fault or negligence, do not state facts, but conclusions of law which do not belong to the province of the jury. They can do nothing but state the facts that have been established by the evidence. Therefore, such conclusions of law must be disregarded in declaring the law arising upon the facts found in the rendition of the judgment thereon. *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186; *Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind 582; *Conner* v. *Citizens' Street R. W. Co.,* 105 Ind. 62; *Chicago, etc., R. W. Co.* v. *Burger,* 124 Ind. 275; *Louisville, etc., R. W. Co.* v. *Lynch,* 147 Ind. 165; *Board, etc.,* v. *Bonebrake,* 146 Ind. 311; *Terre Haute, etc., R. R. Co.* v. *Becker, Admx.,* 146 Ind. 202; *Teegarden* v. *Lewis,* 145 Ind. 98.

The first, second, and third interrogatories and answers thereto establish as facts no longer in dispute that the plaintiff passed over said sidewalk three or four times a week prior to January 26, 1896, and ever since September 1, 1895, four months prior to his injury, and in fact had actual knowledge that said side-

walk was in truth old, that the boards were loose, and that said sidewalk was dangerous to pass over in the night time. And by the fourth, that said sidewalk was icy, and by the fifth, that he walked over it on the night of his injury with his hands in his pockets with full knowledge that some of the boards in the sidewalk were loose and liable to trip a passenger. And by the sixth that he could easily, conveniently, and safely have gone home by Main and Adams streets. And by the seventh, that at the time of receiving his injury there was no evidence that he was actually trying to avoid anticipated danger by reason of said sidewalk being out of repair.

If these facts do not show affirmatively that the plaintiff failed to exercise ordinary care for his own safety, and hence guilty of contributory negligence, they are at least sufficient to show a complete failure on his part affirmatively to establish that he was exercising ordinary care for his own safety when he was hurt, and was free from contributory fault or negligence. The burden of establishing affirmatively this indispensable element of his action being, as we have seen, on the plaintiff, the failure so to establish the same is in legal effect a finding that it did not exist. *Fisher, Admr.,* v. *Louisville, etc., R. W. Co.,* 146 Ind. 558, and cases there cited; *Boyer* v. *Robertson,* 144 Ind. 604, and cases there cited.

But as to plaintiff's knowledge of the condition of the sidewalk, his counsel contend that the verdict shows that he was ignorant thereof. They rely on interrogatories and answers twelve and thirteen. The twelfth finds that he was at the time of, and at all times prior to his injury, without notice or knowledge of the defect. If the jury meant by this that he was ignorant of the defective sidewalk at the time of his injury, then it irresistibly places their understanding

or their integrity sadly in doubt, because they had already fully and unmistakably found that he knew all about it. But justice to all, as well as fairness to the jury, requires us to harmonize their findings if possible. The next, the thirteenth interrogatory and answer, shows what the jury had reference to by the word "defect," as used in the twelfth. The thirteenth is to the effect that he had no knowledge that the board was loose and not nailed, and not resting on said south stringer. That must be the defect that these two interrogatories were intended by the jury to cover and refer to. But that does not contradict the finding in the others, that he had passed over the sidewalk three or four times a week, and had known that it was old, out of repair, the boards loose and dangerous to walk on, especially after night, for four months before he was injured thereon. It was not necessary that the finding should show that he knew that that particular board was loose. It was enough that it appears from the verdict that appellee knew of the general condition of the sidewalk, it making no difference that he was ignorant of the fact that the particular board causing his injury was loose or in a defective condition. So the finding shows his knowledge of the defect was complete.

But appellee's counsel contend that findings nine and ten show that the plaintiff was walking carefully and slowly on the sidewalk when he was thrown down and injured, and hence there is an affirmative finding that he was free from contributory negligence. If the court could say, as matter of law, that a man who walks carefully and slowly into or upon a place of danger, as the jury had previously found this was, would be free from contributory fault, there might be some plausible ground for the contention. But there is no such law. The plaintiff was required to establish

affirmatively such a state of facts as show that the court would be authorized to conclude therefrom, as a matter of law, that he was free from contributory fault or negligence. To establish that he was walking slowly and carefully does not establish that he was acting with ordinary care for his own safety. But if we were to hold that walking slowly and carefully meant that he was acting with ordinary care for his own safety, we should bring those findings into irreconcilable contradiction of the seventh finding, which is, that plaintiff, at the time of receiving said injury, was not actually trying to avoid anticipated danger by reason of said sidewalk being old and out of repair. If, with full knowledge of the danger, already shown, and it anticipated, he was not actually trying to avoid it, he certainly could not be acting with ordinary care for his own safety. Therefore, when the jury found he was walking slowly and carefully, they did not mean to find that he was exercising ordinary care for his own safety. To hold otherwise would seriously impeach either the intergrity or the comprehension of the jury.

Therefore, there is a total failure to find that any degree of care was used by the plaintiff to avoid danger in passing over the walk at the time he was injured. The case of *City of Bedford* v. *Neal*, 143 Ind. 425, is very much like the case now before us. It was there said, at page 428, that: "There is no evidence to show what degree of care she used to avoid danger in passing over the walk at the time she was injured. It is not enough for the plaintiff in such cases to prove the negligence of the defendant. The plaintiff must also prove that his own negligence or want of ordinary care did not contribute to bring about his own injury. *City of Plymouth* v. *Milner*, 117 Ind. 324. It is true it is the duty of a city to keep the streets and side-

walks thereof in a reasonably safe condition for travel. * * * But that duty and obligation does not absolve the plaintiff from the duty and obligation to exercise ordinary care for his own safety. * * * As before stated, the appellee knew all about the defect in the sidewalk when she ventured upon it the last time in the dark, whereby she received her fall and injury. It is true that it is settled law in this court, that because one has knowledge that a highway or sidewalk is out of repair, or even dangerous, he is not therefore bound to forego travel upon such highway or sidewalk *City of Huntington* v. *Breen,* 77 Ind. 29; *Wilson* v. *Trafalgar, etc., Grav. R. Co.,* 83 Ind. 326; *Wilson* v. *Trafalgar, etc., Grav. R. Co.,* 93 Ind. 287; *Nave* v. *Flack,* 90 Ind. 205, 46 Am. Rep. 205; *City of South Bend* v. *Hardy,* 98 Ind. 577, 49 Am. Rep. 792; *Town of Albion* v. *Hetrick,* 90 Ind. 545, 46 Am. Rep. 230; *Turner* v. *Buchanan,* 82 Ind. 147, 42 Am. Rep. 485.

"But the doctrine to be extracted from these cases is that a person with knowledge of the defect or danger must, in attempting to pass, exercise care proportioned to the known danger to avoid injury. And as a consequence, the appellee in the case before us having knowledge of the defective and unsafe condition of the sidewalk when she entered upon it the last time in the dark, she was required to exercise more care than she would have been required to exercise had she been ignorant of the defect, or there had been no defect and it had been daylight. * * * It is true the appellee was only required to exercise ordinary care under the circumstances to exculpate her from the charge of contributory negligence. * * * Ordinary care, however, is a relative term. What would be ordinary care under one set of circumstances might be gross negligence under a different set of circum-

stances. Therefore, what would constitute ordinary care to avoid injury in passing over a defective and unsafe sidewalk in the dark by one ignorant of its defective and unsafe condition would not constitute ordinary care in one thus passing who had knowledge of its defective and unsafe condition. There is not a particle of evidence that the appellee used any care to avoid the accident or harm to herself. Nor is there any evidence that she used her knowledge of the defective or unsafe condition of the sidewalk to avoid injury to herself. There was, therefore, a total lack of evidence to establish one of the indispensable elements of the plaintiff's cause of action."

The above language is exactly applicable to the special verdict in this case, and hence the court erred in sustaining the plaintiff's motion for judgment in his favor on the special verdict.

The judgment is reversed, and the cause remanded, with instructions to sustain the appellant's motion for judgment in its favor, and render judgment accordingly.