LIBERTY CANNING COMPANY v. LIPPENCOTT COMPANY.

[No. 11,412.    Filed December 6, 1922.·    Rehearing denied March
6, 1923.    Petition to transfer dismissed June 8, 1923.]

1. APPEAL.— *Briefs.— Insufficient Recital of Evidence.— Omissions Supplied by Appellee.—Rules of Court.*—Where the sufficiency of the evidence to sustain the verdict is challenged on appeal, objection to appellant's brief for failure to set out a condensed recital of the evidence in narrative form, as required by Rule 22, governing the preparation of briefs, is unavailing, where appellee has supplied in its brief the evidence claimed to be omitted from appellant's brief, notwithstanding appellee's disavowal of any intention of supplying any omission. p. 185.

2. SALES.—*Buyer's Breach of Contract.—Seller's Remedies.*—Where a contract of lease provided that cans sold were to be stored on buyer's premises, and that all cans in storage on a specified date would be purchased and paid for in accordance with the contract of sale, the seller, on the buyer's failure to comply with the contract, had two remedies, one to retain title to the cans and bring an action for damages based on a breach of the contract, and the other to surrender title and bring an action for the contract price. p. 190.

3. RECEIVERS.—*Sale of Receivership Property.—Judgment Confirming Sale.—Collateral Attack.*—Where, at the time of the sale of a canning factory by a receiver, there were on the premises 206,000 tin cans, which were purchased by defendant, notwithstanding that the receiver's report enumerated 54,276 tin cans as part of the personal property, but the court's entry confirming the sale recited that the property sold included all personal property, machinery, etc., in plaintiff's action in replevin of 151,274 cans, alleged to have been purchased by it at a subsequent sale by the receiver, the judgment in replevin, which confirmed title to all cans in defendant, although the receiver's report on the sale showed only 54,276 sold, *held* not to be in effect a collateral attack on the judgment confirming the receiver's sale. p. 191.

4. SALES.—*Contract.—Provisions in Seller's Favor.—Waiver.*—A provision in a contract that a quantity of tin cans stored on the buyer's premises were not to become the buyer's property until paid for by him, and transferred by bill of sale in accordance with the sale contract, was for the benefit of the seller, and could be waived by it. p. 193.

From Warrick Circuit Court; *Elmer Q. Lockyear,*
Special Judge.

Action by the Liberty Canning Company against the Lippencott Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*A. L. Gray* and *Kiper & Fulling,* for appellant.

*Lenpha A. Folsom, Caleb J. Lindsey* and *Vincent H. Beckman,* for appellee.

BATMAN, C. J.—This is an action in replevin by which appellant is seeking to recover the possession of a quantity of cans from appellee. After issues were joined, the cause was submitted to the court for trial, resulting in a judgment in favor of appellee. Appellant filed a motion for a new trial on the grounds that the decision of the court is not sustained by sufficient evidence, and is contrary to law, which was overruled. This action of the court is made the basis of the only error assigned on appeal.

Appellee claims that no question is presented in this appeal, because of appellant's failure to comply with the rules governing the preparation of briefs. It is urged, among other things, that there is a failure to set out a condensed recital of the evidence in narrative form, as required by Rule 22, where the sufficiency of the evidence to sustain the verdict is challenged. But we observe that appellee has supplied in its brief much of the evidence, which it claims is omitted from appellant's brief, and by this means has rendered his objection thereto in this regard unavailing. This is true, notwithstanding appellee's express disavowal of any intention of supplying any omission in appellant's brief, as the effect of its act in that regard cannot be thus limited. *Gwinn* v. *Hobbs* (1917), 72 Ind. App. 439, 118 N. E. 155. Appellee points out a number of facts pertaining to the record, which are not shown in appellant's brief, and makes these omissions a subject of criticism. If these omissions were

from the record, a far different question would be presented, but, as stated in the case last cited, it would be unreasonable to hold that every detail of the record must be shown in the brief, in order to conform to the rules relating to a concise statement of the record. To so hold would require a technical rather than a substantial compliance. While a stricter compliance with the rules than was observed by appellant in the preparation of its brief would be commendable, a desire to base our decisions, where reasonably possible, upon the merits of a cause rather than upon technicalities, has led us to accept appellant's brief as a good faith effort to comply with the rules, resulting in substantial, although not a full compliance therewith. *Peoples State Bank* v. *Kelly* (1922), 78 Ind. App. 418, 136 N. E. 30; *Evansville R. Co.* v. *Miller* (1916), 64 Ind. App. 206, 111 N. E. 1031; *City of LaFayette* v. *Clark, Admx.* (1921), 76 Ind. App. 565, 132 N. E. 561.

There was substantial evidence introduced on the trial which tends to establish the following facts: The Citizens Trust Company of Huntingburg, Ind., as receiver of the B. F. Shaver Canning Company, while operating the latter's canning plants under an order of the Dubois Circuit Court, entered into two contracts with the Heekin Can Company by which the former purchased cans of the latter for its use during the season of 1919, and leased to it space in its plants for the storage of cans during said season. The leasing contract contains the following provisions, among others:

"It is mutually understood that lessee will not so store on the premises hereby leased more than the seventeen (17) cars above named together with additional cars above mentioned by Aug. 1st, 1919, and that all cans remaining, in storage on said premises on Dec. 31, 1919, shall be forthwith purchased and paid for by lessor in accordance with a contract for the sale of cans between the parties

hereto, dated May 31, 1919. Cans stored under this lease and storage agreement are the property of lessee (Heekin Can Co.) and shall not become the property of or be used by lessor (Receivers of B. F. Shaver Canning Co.) until paid for and transferred by bill of sale in accordance with said sale contract."

Subsequently said Heekin Can Company stored a quantity of cans on the premises in the hands of said receiver at Boonville, Indiana, pursuant to said leasing contract. Of such cans so stored 206,000 were still on said premises on December 31, 1919. Of this number the ownership of 54,276 had been acquired by said receiver prior to said date, and the remaining 151,724 were still in storage. On Jan. 2, 1920, the said Heekin Can Company wrote a letter to said receiver demanding payment of the balance due it for cans furnished under said contracts, including the 151,724 in storage at Boonville, Indiana, on December 31, 1919, and on the same day drew a sight draft on said receiver for said amount, which was duly presented and payment refused. Thereafter, on January 19, 1920, said Heekin Can Company filed a claim in the Dubois Circuit Court against said receiver for said amount, which was, thereafter, on March 26, 1920, duly allowed and ordered paid. On January 14, 1920, said receiver filed his petition, asking an order of court directing him to sell all the property belonging to his receivership, and the court on the same day granted said petition, and made an order whereby it directed that an inventory be made of said property, and—"that the said real estate and all of the personal property of said canning company, as set forth and described in the petition herein, should be sold free and discharged from each and all of the liens, claims and demands of the parties and creditors of said canning company, and of all other persons." Thereupon the receiver caused separate inventories to

be made of the real estate and personal property belonging to each plant covered by his trust, the inventory of the plant at Boonville, Indiana, showing 206,000 cans on hands.   February 25, 1920, was fixed as the day for the sale of said property, and due notice thereof was given.   Prior to said date copies of said inventories were sent to prospective bidders by the bookkeeper and office man of said receiver, one of the same being sent to appellee.   After receiving such copy appellee caused two of its representatives to inspect the property to be offered for sale, who visited the plant at Boonville, Indiana, for that purpose.   They were shown through this plant by a representative of the receiver, who assisted them in counting the two piles of cans therein containing 206,000.   One of these representatives of appellee attended the sale of said property, and, on its behalf, made bids on the said Boonville plant and personal property connected therewith.   While the property of this plant was being offered, he presented to the officer of the receiver conducting the sale the copy of the inventory which appellee had theretofore received, and, pointing to the inventory of the Boonville plant, in which was listed 206,000 cans, asked: "Now is this what we are bidding on?"   The officer looked at it, and answered in substance:   That is an inventory of what we are offering, and of what you are bidding upon.   Appellee then increased its bid, which was accepted as the best bid offered.   Appellee's representative then asked the officer of the receiver conducting the sale to certify to his copy of the inventory in order that he might show his principal what was included in the purchase, but he refused, saying that he had discovered an error in the inventory.   He then drew a line through the number 206,000 in appellee's copy, and wrote in its stead the number 54,276, before the word "cans," and then certified to the same as

amended. Appellee's representative objected to this at the time it was done, insisting that his principal had purchased the 206,000 cans shown on the inventory. The receiver subsequently made a report of said sale, stating in substance, among other things, that it had received a bid of $50,000 from appellee for the Boonville plant, including the personal property connected therewith, which was the highest bid received therefor, and recommended that the same be accepted, and the sale confirmed. In said report the real estate belonging to said plant is described, and the personal property is enumerated, containing under the heading "Supplies," among other things, the following: "54,276 No. 2 tin cans." In the entry confirming said sale it is recited, that the property sold consists of certain real estate (describing it), "together with all buildings and factories thereon situate, and all personal property, fixtures and supplies, except fertilizer now stored in the boiler room, and any other property therein belonging to any other person." The order confirming the sale is as follows: "It is therefore now ordered by the court that said sale so reported be and the same is in all things confirmed, and said receiver is ordered to execute its deed conveying said real estate to the purchaser. * * *" The receiver, pursuant to said order, executed a deed to appellee, in which the following appears immediately after a description of the real estate, "including all of the buildings, machinery, fixtures, supplies and personal property, except fertilizer now in the boiler rooms, and such other personal property as cans, belonging to any other person or corporation, upon said premises." The record recites that said deed was presented to the court, duly examined and approved, and the receiver ordered to deliver the same to appellee. Following the confirmation of said sale, appellee took possession of the cans involved in this action, as

a part of the property acquired thereby, and is claiming title by virtue thereof. Subsequently the receiver filed a petition and obtained an order for the sale of certain cans belonging to his trust, including the 151,724 in storage in said Boonville plant on December 31, 1919, being the cans in question in this action, and in pursuance thereof sold the same to appellant on deferred payments of six and nine months, evidenced by its promissory notes. Said sale was reported to the court making the order, and duly confirmed. Appellant is now claiming title thereto by virtue of said sale, and failing to obtain possession thereof from appellee on demand, instituted this action to recover the same.

It is obvious that, if the title to the cans in question passed to appellee by virtue of the first sale by the receiver, the second sale thereof to appellant was 2. a nullity, in so far as such cans are concerned, and the judgment must be affirmed. The evidence makes it clearly apparent that it was the purpose of the receiver in its petition to ask for an order to sell all the property of the B. F. Shaver Canning Company of whatsoever kind; that the court ordered all of such property sold; that the receiver undertook to sell all of the same; and that the court in confirming the sale of the Boonville property, adjudged that all of the same had been sold to appellee. With this view of the evidence it only remains for us to determine whether the trial court was warranted in finding that the 151,724 cans in question were the property of said company at the time the receiver made said first sale, for if they were appellee clearly obtained title thereto by virtue thereof. It will be observed that, in that portion of the leasing contract between the receiver and the Heekin Can Company set out above, it is provided: "that all cans, remaining in storage on said premises on December 31, 1919, shall be forthwith purchased and paid

for by lessor in accordance with a contract for the sale of cans between the parties hereto, dated May 31, 1919." If said receiver failed to comply with this provision of said contract, the can company had two remedies, one was to retain title to the cans and bring an action for damages, based on a breach of the contract, and the other was to surrender the title thereto and bring an action for the contract price thereof. The evidence discloses that the can company made demand for the purchase price of the cans in question, on January 2, 1920, by letter and sight draft, and subsequently filed a claim against the receiver therefor, which the court allowed and ordered paid, thereby pursuing the latter remedy. This makes it clear that the title to the cans in question was vested in the said B. F. Shaver Canning Company on January 2, 1920, as the court evidently found in allowing the claim of the Heekin Can Company for the purchase price thereof, and ordering the same paid. This being true, title thereto passed to appellee under the order of court approving the sale made to it by the receiver on February 25, 1920, since the court found, in effect, that the only property excepted consisted of "all fertilizer stored in the boiler room, and any other property therein belonging to any other person," and entered a general order confirming the sale.

Appellant, in seeking to avoid the conclusion stated above, has made a number of contentions, but we only deem it necessary to consider two of them. It 3. asserts that to hold that the title to the cans in question passed to appellee by virtue of the first sale reported by the receiver would give effect to a collateral attack upon the judgment of the Dubois Circuit Court, confirming said sale. In making this contention appellant evidently assumes that such judgment excludes said cans from the property sold to appellee.

However, we do not so construe it. It will be observed that the report of the sale made by the receiver does not expressly state that any property of the B. F. Shaver Canning Company is excluded from the sale to appellee, but it is fairly subject to an inference that all of its Boonville plant, including equipment and supplies, had been sold to appellee, subject to the court's confirmation, as the receiver had asked in its petition, and the court had ordered. The fact that the number of the various articles sold are enumerated in the report under certain headings such as "Supplies," etc., is not conclusive against such an inference, or conclusive as to the number of such articles actually sold, where the number given differs from the true number owned by said company at such plant. Therefore we do not accept the number of cans stated in the receiver's report as of controlling importance, but give more weight to the fact that the court found, in effect, after setting out a description of the real estate, that the sale included "all buildings and factories thereon situate, and all personal property, machinery, fixtures and supplies, except all fertilizer now stored in the boiler room, and any other property therein belonging to any other person." It thus clearly appears that the court understood from the receiver's report, notwithstanding any possible inaccuracy in the enumeration of the various articles mentioned therein, that all of the property of the B. F. Shaver Canning Company at the Boonville plant had been sold to appellee, and the judgment in general terms, confirming such sale, should be construed in the light of such apparent fact. For this reason we conclude that the judgment in the instant case does not give effect to a collateral attack upon such prior judgment, as appellant contends. This conclusion renders a consideration of the contention that appellee acquiesced in the confirmation of the sale unnecessary.

Appellant, in contending that the 151,724 cans in question did not belong to the B. F. Shaver Canning Company at the time of the sale of the Boonville plant to appellee, places stress upon the following provision of the leasing contract between the receiver and the Heekin Can Company: "Cans stored under this lease and storage agreement are the property of the lessee (Heekin Can Co.), and shall not become the property of or be used by lessor (Receivers of B. F. Shaver Canning Co.) until paid for and transferred by bill of sale in accordance with said sale contract." It asserts that until such payment, and transfer in the manner stated, that the contract remained executory, and the Heekin Can Company could have taken possession of the cans at any time; that since such payment was not made until after the sale to appellee, the title thereto was not in the B. F. Shaver Canning Company at such time, and consequently appellee did not acquire any title to said cans by virtue of such sale. This provision of the contract was evidently inserted for the benefit of said Heekin Can Company, and hence could be waived by it, which the court may have found was done, when, on January 2, 1920, it drew a sight draft on the receiver for the contract price thereof, instead of demanding damages for a breach of the contract of sale. We conclude that appellant's contention in the particular stated is not well taken. Other facts are cited by appellant in support of its contentions, but as they are not of controlling importance we would not be justified in extending our opinion further, in order to consider them.

Appellant has failed to show that the court erred in overruling its motion for a new trial, and as this is the only error assigned, the judgment is affirmed.